HANNAH ANDERMAN v. FRED MEIER.[1]

February 5, 1904.

Nos. 13,641—(163).

**Parol Evidence.**

Parol evidence of the true consideration for a written contract *held* not incompetent as varying or contradicting the terms of the writing.

**Verdict.**

Evidence *held* to sustain the order of the trial court directing a verdict for plaintiff. The facts do not make a case analogous to composition between creditors.

Action in the district court for Martin county to recover $600, and interest, alleged to be the true consideration agreed to be paid by defendant for the execution by plaintiff of a written release, the consideration expressed in the instrument being one dollar. The case was tried before Quinn, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Allen & Ward,* for appellant.

*Dean & Palmer,* for respondent.

BROWN, J.

The facts in this case are as follows: John H. Meier owned at the time of his death a tract of land consisting of one hundred sixty acres in Martin county. He died in 1885, leaving surviving him his widow; defendant, a son; plaintiff, a daughter; and another daughter, named Lucy. An administrator was duly appointed, who took charge of his property, but a settlement of the estate in due course of administration was delayed owing to a controversy as to the boundaries of the land. There being no personal property sufficient to pay the debts, the land was ordered by the probate court sold for that purpose. Subsequent to the date of that order it was orally agreed by all the parties—the administrator and heirs above named—that the land should be sold to defendant for the sum of $30 per acre, the debts paid from the pro-

[1]Reported in 98 N. W. 327.

ceeds, and the balance divided among the heirs. Thereafter the boundary line litigation was settled, and with the consent of all the parties interested the land was sold by the administrator to one Krahmer for the sum of $40 per acre, or $1,600 more than defendant had agreed to pay for it. The administrator executed a proper deed conveying the property to Krahmer, and received the full consideration therefor. The heirs above named having been willing that the property should be sold to defendant for $30 per acre, and that having been the understanding reached by them prior to the sale to Krahmer, it was defendant's claim that the sum of $1,600 received from Krahmer over and above the amount he had agreed to pay for the land belonged to him. The widow and daughter Lucy were willing to concede this, but plaintiff, the other daughter, disputed it, and declined to surrender her rights, it being her contention that, the proposed sale to defendant never having been fully carried out, the entire proceeds from the sale to Krahmer belonged to the estate, and should be divided between the heirs. She persisted in her claim in this respect, and not until defendant made the promise upon which this action is founded did she join her mother and sister in a written relinquishment of her rights. The consideration expressed in the writing was one dollar, but she claims that the writing did not express the true consideration; that in fact, to secure her signature to the release, defendant promised and agreed to pay her the sum of $600.

The complaint alleged this agreement, that defendant has never paid the same, and plaintiff demanded judgment for the amount, with interest. At the conclusion of plaintiff's case in the court below a verdict was directed for plaintiff for the amount claimed, and defendant appealed from an order denying his alternative motion for judgment notwithstanding the verdict, or for a new trial.

Two principal questions are presented on this appeal:

1. Whether the evidence tending to show the alleged agreement on the part of defendant to pay plaintiff $600 for her relinquishment of all rights in the fund of $1,600 was incompetent, as varying the terms of the written release.

2. Whether the contract to pay her that amount was a fraud upon the other heirs, it being conceded that they received no part of the fund, and consequently void and unenforceable.

1. The consideration expressed in the written release was the sum of one dollar, and the writing does not refer to any other or different consideration. In such cases it is always competent to show the true consideration for a written contract. We have frequently held this, and our decisions are in harmony with the general trend of authorities on the subject. Langan v. Iverson, 78 Minn. 299, 80 N. W. 1051. Of course, if the consideration of a written contract be other than of a pecuniary nature, and is expressly set out in the writing, the consideration so expressed might be conclusive on the parties; but where it is expressed in money the subject is always open to explanation by extrinsic evidence.

2. It is claimed on the part of defendant that the agreement to pay plaintiff the sum of $600 for her relinquishment of all rights to the $1,600 fund was a fraud upon the mother and daughter Lucy, and therefore void. It is urged that the principle of law applicable to composition between creditors applies, and controls the case. We do not concur in this view. Composition with creditors is an arrangement between a debtor and his creditors, the latter agreeing with the debtor, and mutually among themselves, to receive and the debtor to pay, a certain part or portion of the demands due the several creditors in full payment and in discharge of the debt. An agreement between a debtor and a single creditor, whereby the latter agrees to discharge the former on the payment of a less sum than the whole debt, is void for lack of consideration. But composition agreements between a debtor and several creditors are sustained on the theory that the mutual covenants and agreements between the several creditors by which they relinquish their claim on payment of a part constitute a consideration sufficient to support the agreement.

The facts before us do not bring the case at bar within this rule of the law. It is conceded that the mother and daughter Lucy were not only willing, but exceedingly anxious, to surrender to defendant their rights to the $1,600, and they made efforts to induce plaintiff to do likewise; but she at all times persistently refused to do so, and not until defendant agreed to pay her the sum of $600 therefor did she consent. She made no agreement with her mother and sister by which all agreed to relinquish their claims to the money, in consideration that

each would do so; nor does the record contain any evidence tending to show that the mother and sister Lucy released or relinquished their rights on the understanding that plaintiff was so to act. It is true that plaintiff did not inform them of defendant's promise to her, and the evidence is not clear whether they knew of that agreement at the time the release was signed. But this is not of controlling importance. If it be conceded that they had no such information, it would not give rise to a legal inference that their relinquishment was made in consideration that plaintiff also relinquish. So the record wholly fails to show any agreement or understanding between plaintiff and her mother and sister by which they, in consideration of the agreement of each other, surrendered to defendant their rights in the $1,600 fund. Defendant offered no evidence on the trial, and we are not advised either of his version or the version of his mother and sister on this subject. Plaintiff testified distinctly that it was not agreed between her and her mother and sister that all were jointly to surrender their rights to defendant, and defendant offered no evidence to contradict her.

It is immaterial that the sum of $600, which defendant promised to pay plaintiff, exceeded her interest in the fund. It may be true that, if the fund had been divided in accordance with the legal rights of the parties, plaintiff would have received much less than that amount. But the parties were brother and sister, and, whatever may have been the motive in promising to pay plaintiff more than her legal interest, the fact that he did so is not evidence of fraud. The mother and sister Lucy were willing to surrender whatever rights they had in the premises, and it does not appear that their willingness to do so was dependent in any manner upon the disposition of plaintiff in that respect. For aught that appears in the record, they would have surrendered their rights had they been fully informed that defendant had agreed to pay plaintiff $600 for her relinquishment. Fraud is never presumed. The burden to prove it is always upon the party alleging it. There was no attempt to do so in this case. The evidence is undisputed, and the trial court correctly ordered a verdict for plaintiff. All assignments of error presented in appellant's brief have been fully considered, and we find no reversible error.

Order affirmed.

START, C. J. (dissenting).

I dissent. The question to be decided is not whether the evidence is sufficient to sustain a verdict for the plaintiff, but whether the trial court was justified by the evidence in directing such a verdict.

The evidence is practically undisputed that there was on and prior to April 9, 1902, in the hands of the administrator of the estate of John H. Meier, deceased, the sum of $1,600, which legally belonged to his widow, Johanna Meier, and his three children, the plaintiff, the defendant and Lucy Meier. The distributive share of the plaintiff and each of the other children in this fund was $355.55. The balance thereof belonged to the widow. That the defendant claimed that equitably the whole fund ought to be paid to him. The mother and the daughter Lucy were willing that it should be so paid, and urged the plaintiff to assent to it, but the plaintiff was not at first willing to do so. That finally, and on the day named, the plaintiff, the mother, and the daughter executed in consideration of one dollar a release to the defendant, whereby they severally released all claim to the fund of $1,600, and consented that the whole thereof might be paid by the administrator to the defendant, and it was so paid. That the defendant promised to pay the plaintiff $600—that is, $244.45 more than her share of the fund—as a consideration for signing the release, and, except for such promise, she would not have signed it; and, further, that the defendant has never paid any part of the $600, and that this action was brought to enforce such promise to pay.

But the question whether the agreement between the plaintiff and the defendant as to the payment of $600 was a secret one, or whether the mother and sister would have signed the release had they known of it, was at least one for the jury. There was direct evidence in the case tending to show that neither the mother nor the sister knew anything about the agreement before they signed the release, and there is strong circumstantial evidence in the record and some direct evidence tending to show that they would not have signed the release had they known of the secret agreement. If they were willing to release their respective shares of the fund without reference to any action by the plaintiff in the premises, then why did the plaintiff exact and the defendant promise to pay her as a consideration for her joining in the release the full amount of her share of the fund and a bonus of $244.45?

91 M.—27

It would seem that there was but one reasonable answer to the question, which is that the mother and sister were not willing to sign the release unless the plaintiff also signed it on the same terms that they did. The acts of the plaintiff and defendant cannot be explained on any other reasonable hypothesis than that her signature to the release was essential in order to secure the execution of the release by the mother and the daughter. There is no other explanation of why the defendant promised to pay to the plaintiff the full amount of her share in the fund and a bonus of $244.45. Can it be assumed that the mother and daughter would have been willing to have released their respective shares in the fund if they had knowledge of the secret agreement whereby their brother was compelled to pay the bonus? There is no evidence tending to show that they were willing to give the plaintiff any part of the fund which did not belong to her.

But this is not all, the husband of the plaintiff, who acted for her in the matter of the release, on his cross-examination as a witness was compelled substantially to admit the fraudulent character of the transaction between the defendant and the plaintiff. He testified on the subject as follows:

> "Q. What was your wife to give Freddie [the defendant] for that extra $244? (Objected to by plaintiff as not proper cross-examination. Objection sustained by the court.) Q. The real thing that you was to do was to have her sign the contract, so that Lucy and the old lady would sign the contract, so that Freddie would get the thousand dollars, and you would get the six hundred dollars. That is the shape of it? A. I never asked him to sign it. Q. That is not what I asked you. Answer 'Yes' or 'No.' * * * A. Yes, sir. Q. And in all that matter and all those matters you were acting as the agent of your wife? A. I was."

The evidence tended to show that the mother at this time was old, and of feeble mind, and that the daughter was a young girl, just of legal age. Now, for the purpose of determining whether the trial court was justified in directing a verdict for the plaintiff we must assume every fact as proven which the evidence tends to establish, taking the most favorable view for the defendant of the evidence. Then, in addition

to the facts which the undisputed evidence establishes, it must be assumed that the promise to pay the $600 was a secret one, made for the purpose of inducing the plaintiff to execute the release, and that the mother and daughter would not have signed the release had they known of the secret agreement; or, in other words, we must assume that the agreement was a fraudulent scheme to enable the plaintiff and defendant to divide the whole fund between them. If such were the case, then the secret agreement which the plaintiff seeks by this action to enforce was a fraud with which no court will soil its hands in an attempt to enforce. The character and purpose of the agreement, it seems to me, were questions for the jury, and that the case should have been submitted to them.